on behalf of Mr. Garcia. I'm going to try to keep my eye on the clock to try to reserve some time for him, but Mr. Garcia's conviction should be reversed because it was based on two invalid deportations. And let me start with 1994. The big problem in the 1994 proceeding was that the waiver of counsel was invalid. Now, the circuit's cases and the Federal regulations make clear that in order for a waiver of counsel to be valid, there has to be an individual inquiry of each person in the deportation proceedings. Now, Lopez-Vasquez and Zarate and Martinez and Estrada-Torres make that principle clear with respect to waiver of appeal. Ahumada-Aguilar and Hernandez-Gill extend that principle explicitly to the waiver of counsel. Now, in this 1994 proceeding, Mr. Garcia was never individually asked if he wished to waive counsel. I think there's no dispute on that fact. It's in the excerpts of record at page 77. Now, because he was never asked if he wished to waive counsel personally, and I think it's quite clear that's invalid waiver, and the government cites no cases that show that mass silent waiver is appropriate. Suppose we were to agree with you that there was an invalid waiver of counsel. Has Garcia made a plausible showing that he had – has he made a showing that he has plausible grounds for relief? Yes, Your Honor. He's – the – what the invalid waiver of counsel did was it prevented Mr. Garcia from pursuing two avenues of available relief from deportation. And that's first and foremost, it's not even clear that Mr. Garcia was deportable on the grounds charged in 1994. Now, in – in 94, he was – he was charged with – with deportability on the basis that he had been convicted of a fire – of an offense involving a firearm, as defined by Section 921A of Title 18. And that's – that's the specific language of the immigration statute. Now, he was convicted of California Penal Code – violating California Penal Code Section 245A2. There's a mismatch between the definition of firearm in the California offense and the Federal offense as defined by Section 921A. Now, it's – the Taylor – the that offense, 245A2, is not categorically a crime involving a firearm. Because of the antique question? Yes, Your Honor. Because the Taylor analysis – Assuming for the moment that raising the antique question would not be a kind of defense, what we're – what we're suggesting is that in every – every one of these, there has to be proof that it was not an antique, even though it's some gangbanger around shooting at people. He might have been using antique guns to do it. And so on the categorical thing, we're supposed to assume that. Is that right? As a matter of law, I agree with that statement, Your Honor. It's possible. It certainly is possible to establish that just through a plea colloquy or judicially noticeable – Could you talk a little louder? I'm having a real hard time hearing you. I'll try to be slower. There's so many issues, Your Honor. She's talking so quickly. I can't – I can't hear every word you're saying. Okay. It's – it's – it is possible, if you move from the – the categorical analysis to the modified categorical analysis, it is possible to establish deportability under the applicable – the applicable immigration statute, such as through a plea colloquy or through judicially noticeable documents. And that was not established in this case. Even in the record as presented – Sure. They could – they could have said, in the California proceeding, they could have said, and your gun wasn't antique, right? And you'd say, no, this is an antique gun or it was an antique gun. I understand. Let me ask you, before we use up all your time, assuming that the – the first one, the 1994, was no good, okay, let's just say, but the 1997 was properly advised, properly waived, assuming that for the moment, does the 1994 make any difference, really? He was – he was deported after a – Let's – let's assume for the moment, after a valid deportation, after the 1997 proceeding, and then he comes back, and that's what he's being prosecuted for. True? Your Honor, the – the problem – well, with the – with assuming the 1994 deportation was invalid, in 1997, when Mr. Garcia returned, he was eligible for two types of relief, neither of which he was informed of. And those two types of relief were withdrawal of application under Section 1225a4 and equitable relief under matter of Ferenas and matter of Malone, which this – which has been recently recognized by the BIA as in matter of Mart in 2005 as still being – Well, that's suggesting that – that every time somebody comes in, the idea has to be all the possible things that conceivably could be like this. Maybe you're entitled to equity because maybe your 1994 proceeding wasn't good, and if you don't tell him that, it's no good. Now, it's something an attorney might have advised him of, but of course, we're assuming that he waived counsel, assuming for this moment, waived counsel. And sticking with those assumptions, Your Honor, he was still – even if we set aside his – whether or not the immigration judge should have informed him of Ferenas Malone relief, he still should have been informed of 1225a5 relief. And given that failure, his – Mr. Garcia's eligibility for Ferenas Malone relief was still a grounds of prejudice, even if Your Honor does not agree that it justifies his failure to appeal under 1326d1. I understand. I understand, Your Honor. Thank you. Okay. And if Your Honor wishes to stick with the 1997 proceeding, he – Mr. Garcia was actually eligible for 1225a4 relief because somebody has to not be lawfully admitted in order to be – in order to qualify for withdrawal of application. If somebody is admitted, they're no longer considered an applicant for – for admission, and they cannot withdraw the application. This is a form of relief. In the regulations, I believe it's 240.11 require the immigration judge to inform individuals of the relief, which the Seventh Circuit in MEMA, that case rejected the government's argument that that regulation does not require an immigration judge to inform an individual of – of 1225a4 relief. I mean, that – that case establishes that that actually is relief. And he was – he was denied the opportunity of establishing his eligibility under the criteria for 1225a4, which are set forth in the regulations at 235.4, that's 8 CFR. And the – the criteria for that form of relief are that the withdrawal be voluntary and that the individual have an intent and ability to depart immediately. That's actually different than, say, voluntary departure, for example. And that the individual remain in custody pending departure. Now, Mr. – Mr. Garcia was also – was also eligible for Freenos Malone relief, notwithstanding the government's arguments that he, for example, was – was also rechargeable under another ground that he could have – that he had – that he had unlawfully entered, because the point of the 1326d inquiry is that he be able to show that he was prejudiced by having a plausible claim to relief, not whether – I think the government inverts the inquiry by having – by asking that Mr. Garcia be able to show that he was necessarily – should have been granted this relief and that the immigration courts be bound by, say, circuit precedent. The point here really is that there was relief that he plausibly had a claim for. I think the – Mr. Garcia's equities are set forth in the briefs, and I would like to reserve the remainder of the time for rebuttal. MR. GARCIA Good morning, Your Honor. Good morning to Arizona, Judge Collins, Kyle Hoffman of the United States. Now, as the Court's questions, I think, have already indicated, there are really two major issues – two separate issues, really, concerning the validity of the two deportations, the 1997 deportation and the 1994 deportation. Now, we would suggest respectfully that the simplest route to affirming the conviction is the 1997 deportation. And that's because, as I think the Court's questions have indicated, there really is no dispute that there was individual advisal, both group and individual advisal, of both the rights to counsel and the rights to appeal. Now, I think counsel for the defendant has gone on to say, well, he – the defendant, Mr. Garcia, could have gotten relief. But I think there's already a preliminary step that's been jumped over, and I think Judge Fernandez's question got to this point, which is, where in the record was there an inference that the immigration should have drawn that he was eligible for these certain kinds of relief? And we've jumped over that to, well, he could have been eligible for this Farinas relief. Now, I will suggest he's not – wouldn't have been eligible for that either. Farinas is an outlier, I would suggest. It's – if you look at the case, the gentleman basically, while he was being employed, went to Alaska, and I think he stopped over briefly in Canada on the way. But essentially, the BIA said this is a – this is an injustice to consider this an entry after a criminal conviction when he was just going on the way of his employment and ended up in Alaska, and we're going to exercise our discretion, essentially, to not find him deportable on those grounds. And then they went further and said, we're going to exercise our discretion and say, even though he's come back in the country, again, without being inspected, we're going to absolve him of that too. It was a direct appeal, a BIA discretion, and would respectfully suggest the circumstances are far removed from this case. I would point the Court to the Seventh Circuit case of E.L. Rodriguez, which essentially says – we would suggest the import is deportation for being in the country without inspection stands on its own bottom. And that's – those were the grounds for the 1997. Do you agree that the 1994 waiver of counsel was invalid? I mean, you're skipping over that. Obviously, you don't think it's your strongest argument. So what are you saying about that? To go to the 1994 deportation, more interesting questions, admittedly. I would suggest that it's not so clear that the waiver of counsel was invalid. And here's the reason I would suggest that. Admittedly, it was not individual. No question about that. We are in heated agreement about that. But if you stack up Ahumada – I believe that's at page 948 of that decision with the colloquy about the advisal of counsel, which was a mess. No question it was a mess. With the advisal of counsel here, which admittedly was by group, but in which the immigration judge says, does anyone want to take a time out, essentially, and go huddle with counsel? And one gentleman said, yes, I do. And that's, in fact, what happened. Now, I would liken that – you know, there are some instances where people and audiences are planted to stand up and give a standing ovation, encouraging others to do likewise. Well, that's, in effect, what happened. If Mr. Garcia wanted counsel, he had a prime example right there. Now, Judge Wardlaw, I agree that if we read the requirement strictly as advisal individually, it fails. No question about that. But I would suggest that if you stack up Ahumada and this case, this case passes muster. That's the only case – What was the impact of the 1994 deportation on the 1997 deportation proceeding? None. I would suggest none. I mean, the factual impact is he's out of the country because he's been previously deported. But I would suggest the legal stance for the proposition, even if that happens, you don't get to engage in self-help. You've got to go through the proper channels, and you can't go in without entry inspection. I hope that answers the Court's question. So admittedly, not an individual advisement of counsel in 1994 suggests that it's not so clear that he was effectively denied counsel. And the other cases upon which Mr. Garcia relies, it's very interesting. I mean, not only are they not collateral attacks, but the defendant or the appellant has either retained counsel or said, I want counsel, and I need a continuance to obtain counsel. I mean, all of those cases are really somebody has affirmatively either retained or said, I want counsel, and then the immigration judge has done something to effectively deny that. When he comes back after the first deportation, if I'm not mistaken, he then commits another felony in California. Is that right? And he's in prison when this second 1997 advisable thing goes down, is that right? I believe that's correct, Your Honor. It looks like he was then prosecuted as a felon and addict in possession of a firearm in 1995. That's correct. I think he had already been, he had sustained another conviction, I think, before his first deportation. Not only had he been convicted of assault with a firearm, but he had been convicted of carrying a concealed weapon in a vehicle. Then he was deported, and then he was found to be a felon in possession of a firearm after he had come back. Okay. So, now, jumping back to the 1997 deportation, there's a suggestion that withdrawal of application would be another form of relief. And I believe there's a case that, I think it was even Judge Fernandez's case, Avenada. I believe that's the case that essentially says that's something solely for the discretion of the Attorney General. And it's something that really is not something that can be used as a basis, I would suggest, for a collateral attack on a deportation. Now, as the Court is going to hear from me on the next matter, unless the Court has, and so we'll hear from me, I'm sure, quite long enough. Unless the Court has further questions, I would submit on that. I suggest that the other issue, the 20-year maximum, really is no issue. There was no objection on those specific grounds in the District Court. There certainly was no objection pre-sentencing. And for that reason, it would be a plain error review. And the defendant admitted that he was deported in 1997. So, after these felony convictions. So, really, no issue there, I would suggest. Does the Court have further questions? Thank you, Counsel. Thank you. Just to briefly address a couple of points regarding the 1997 proceedings. Again, the government's argument that Mr. Garcia's subsequent unlawful entry prior to the 1997 proceeding is dispositive is just not correct. That unlawful entry does not obviate a matter of Malone-slash-Ferenas relief. In matter of Malone, the individual in those proceedings actually unlawfully re-entered. It's the same parallel circumstances as Mr. Garcia's here. And what that case shows is that the immigration judge has the ability to non-protonque reinstate immigration status, despite that subsequent unlawful re-entry. Now, and furthermore, in the matter of Mart, that's the 2005 BIA opinion, the BIA actually remanded to the immigration judge a case of an individual who was denied the ability to present before the immigration judge her application for that type of relief. And as far as the citation to Leal-Rodriguez, that's also neither here nor there, in this case, because that case does not change the fact of the availability of Ferenas-Malone relief at the immigration proceeding level. As to the, I think, Your Honor, Judge Fernandez raised the equities of Mr. Garcia at the time of his second deportation. He, Mr. Garcia had numerous equities in favor of granting of relief. He had extensive family ties in the United States. His parents, siblings, minor son, his girlfriend, who was the mother of his son, were all present in the United States and lawfully, in lawful immigration status. There's no indication that Mr. Garcia had any relatives in Mexico. Thank you, Your Honor. Thank you. This matter will stand submitted at this time. And the next case for argument is United States v. Navarro. Again, counsel, remember to watch your clock, because time really flies when you're having fun.
judges: Fernandez, Wardlaw, Collins